The first case we're going to hear is a motion. Judge Lohier, who is sitting with me this week, has recused on that motion, so he will join us after we hear argument. So, let's proceed. Good morning, Your Honor. My name is Alan Sutton. Good morning, Your Honor. I represent the petitioner, Richard Bermudez, who is actually here. Thank you. The question is, the way I see it, is with the new evidence, that is, the text that occurred when it was discovered post-conviction changed the mind of a reasonable juror. So here, Bermudez, number one, has always been consistent throughout. He's always maintained that he was framed by the police officers in the discovery of the weapon. He said that he never had the weapon, and this was something they used to arrest him. There was no corroborating of any kind. There were no statements of any kind. The first trial, the police officer who was leading the team that night was subsequently convicted in the New York State Supreme Court of perjury. Not in this case, however. No, not in this case. But it was a street stop situation, car stop situation, seizures of weapons. He was falsifying evidence and did that in the State Supreme Court and was sentenced to prison. He and his partner, who was also, I should say, his co-defendant, also testified and admitted that not only were they falsifying evidence, they were teaching other younger officers how to falsify evidence as well in these car seizure situations. So, Bermudez was convicted based on the testimony of one of the two convicted police officers, police officer Eisenman. Eisenman was instrumental in that he laid the foundation for the initial encounter by saying that he overheard a drug-related conversation on the street. Bermudez vehemently denied it. There were no drugs that were found. But the gun was found. Well, the gun was found. But there was no forensic evidence other than the police officer saying, this is what I saw, making that a weapon to Richard Bermudez. And most important is that the other police officers testified as to how they saw the weapon and would Richard Bermudez deal with the weapon, but they testified to Your Honor, it was unaccountably impossible for it to have happened. They testified that the car was parked on the street, Bermudez was in the middle of the area of the truck, he lifted the trunk with his left hand and his right hand took the weapon out of the car, the truck, and while still holding the trunk, somehow passed it to another individual who was on the curb. And that's impossible. So you have, as I said, you have a lot of many scientific evidence. You have anatomical possibilities. You have the first trial which ended in a hung jury, and a police officer who led the team that night in committing in court that in similar situations, he falsified evidence in order to gain a conviction in car-stop situations. Counsel, counsel, excuse me, this is Judge Newman. You began by saying, I think, that your presentation would have a significant effect on a subsequent jury. I'm wondering, why do you think that's the test of getting a certificate of opinion? Well, you know what, I don't think that the, I think that there are a lot of fools in the government space. That may be. I'm not asking you to repeat your argument. This is an appeal for a file of a COA, right? Yes. And what do you understand the standard is for getting a COA? Well, I think the standard here is whether or not a reasonable juror is buying the case. Do you have any case that's supporting your theory that that's the standard? Well, I did. I cited it in the application here, Your Honor, that that is the standard, that there's a, that the new evidence presented, whether it would be admissible or not admissible at a trial, would have to indicate that, or would have to prove that a reasonable juror's buy would be changed and would not, a reasonable juror would not convict based on the evidence presented. Do you think that's the standard? I don't know. I mean, these were, I don't mean to be harsh, but these were crooked cuts. All right. You're telling me again how persuasive your evidence is, and I'm still trying to get the standard in, because I suggest to you the standard is not how persuasive your evidence is. It's quite different. But if you think that's the standard, okay, we'll look at your papers and see if you have a case that supports you. In any event, your time has expired. Court will hear from the government. Thank you. Judge Mueller, Judge Hayden, may it please the Court. Let me start by answering Judge Newman's question. There are two standards that are in play. One is the standard for receiving a certificate of appealability, and one is the standard for the constitutional right asserted below, namely the equitable waiver of the statute of limitations in section 2255. Let me go through each of those, if I may. The standard for obtaining a certificate of appealability is whether, and I quote here, reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong, and that the, quote, issues presented were adequate to deserve encouragement to proceed further. And that's from Miller L. v. Cockerell, 537 U.S. 323, and that's a 2003 Supreme Court case. As the Supreme Court has noted, the COA process screens out issues unworthy of judicial time and attention and ensures that frivolous claims are not assigned to merits accountants, and that's from Gonzales v. Thaler. However, the underlying constitutional issue presents an extremely high bar and one that Bermudez simply does not and cannot meet. And that is specifically that there is no question that under the statute that is under 2255, Miller – Bermudez's claim is untouchable. He – his conviction became final in 2009, even if he claimed that the evidence of Eisenman's arrest and or conviction was new evidence under 2255F4. He learned of that in 2011. He said so in his papers. And yet he didn't raise the 2255 until seven years after his conviction was final and five years after he learned of the problems that Eisenman had. So if he had brought this suit after learning about Eisenman's conviction, you think it would have lied? I don't think that it would have succeeded, but we would have a different issue regarding timing. The timing issue right now is that the Supreme Court and this Court have carved out an equitable exception to 2255's restrictions, specifically that claims of actual innocence can cause the Court to waive the 2255 one-year statute of limitations, whether it is the one from the finality of judgment or from the time of the person's first learned or first woman's learned of diligence of new evidence that gives rise to a technical problem. However, a mere claim of actual innocence—that is, simply saying, I'm innocent, I've always said I'm innocent, I'll always say I'm innocent—is not what gets you over the hump. It's not even close enough to get you over the hump. If it were, there would effectively be no time bar on 2255, because all that a petitioner would have to do would be to say that I'm innocent. Rather, and again, I will quote from McGuigan v. Perkins, 569 U.S. 383, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror— this is the exact opposite of the usual harmlessness standard that we usually have— no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt. That is, it's not enough to say actual innocence is, I think that there's something there that might have planted some reasonable doubt in the juror's mind. Rather, it's, this evidence is so extraordinary that no juror could possibly have convicted him. And this court said so recently, a little over a year ago, in Hyndman v. Brown, 927 F. 3639, in which it stated that, notably, Schlupf emphasizes that actual innocence does not merely require a showing that reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. And Schlupf also requires that this be actual innocence, not simply issues of possible reasonable doubt or legal innocence. Now, in Hyndman, this court did say that there are times that impeachment evidence can be some of the kind of evidence that can be used for actual innocence. However, it's very rare that it'll work. Not only have the courts said over and over again that it's very rare that an actual innocence claim gets passed at the starting date, but the Supreme Court has stated that newly discovered impeachment evidence is a step removed from evidence pertaining to the crime itself and tends only to impeach the credibility of the witness. That's how it will be possible. But a policy counsel just argued that there was no forensic or other evidence. There was no forensic evidence. However, Eisenman was a small part of the puzzle. Eisenman's testimony did not have anything to do with the problems that he ran into later on. And later on is very, very important. And I'll get back to the problems in a second. But I can point out in 2010, that is six years after he arrested Bermudez and four years after Bermudez was convicted at trial, Eisenman was indicted in state court. The indictment alleged actions going back to 2007, specifically actions that arose because he had become a sergeant by that point. And as a sergeant, he had command over a number of officers. And it wasn't that he was planting evidence. There was never an allegation that he planted evidence. Rather, he lied about the infringing and suppression issues, saying, I found the evidence here, when he actually found it someplace else during the illegals. There was never a claim that he planted evidence. Rather, the claim was that he lied about the matter of retrieving the evidence. And you're not saying that's good, right? No, I'm not saying that that's good, but I'm saying that that's not on point to what happens here. And the evidence given against Mr. Bermudez was before he became a sergeant? That's right. The evidence given against Bermudez was when Eisenman was not a team leader and was not a sergeant. The sergeant who testified was Sergeant Ron Kessel. And he was in charge of the team. What happens is Eisenman, as was testified to at trial, Eisenman overhears Bermudez. This is during a trial. Allegedly. Allegedly. The jury seems to agree. Eisenman overhears Bermudez discussing a drug deal, or what sounds like a drug deal. I have bricks at my home. He alerts the rest of his team. So what he does is he simply provides the setups for the jury to understand why everybody is focusing on Bermudez. The rest of the testimony comes from one of their officers. Eisenman never sees the gun. And presumably, he sees it after the arrest. He never sees the gun during the transaction. He doesn't see Bermudez take the gun from the car. What happens is he alerts other members of his team. And they're all following him in their eyes as he goes around the corners. So he wasn't the major player in this arrest. That's absolutely right. He's a major player in that he's told everybody, look at this stuff. But other officers— Counselor. Judge Newman has a question. Oh, I'm sorry. You seem to be focusing entirely on whether there is a strong alternative claim. And I'm wondering, does the government agree that a freestanding claim of actual innocence suffices to get a COA? No, I'm not, Your Honor. I'm doing this just to make sure that the court understands there's no injustice by denying the 2255 here. Here, there wasn't enough of a claim to get over the threshold to get into a full-blown hearing. That is, there's a first— Isn't the test—isn't actual innocence simply a gateway to another—to a constitutional claim? It is a gateway, but the gateway is the demanding standard. That is, again, the courts have been clear that actual innocence is not something that you can simply claim actual innocence and thereby get by. It's a real gateway. And to assert a gateway here, most simply put, the question is, what would the jurors have done in trial if they knew about this? Well, I'm trying to get at it. Is there a constitutional claim even if the gateway were passed? Even if the gateway were passed, I don't think that what has been asserted here would rise to the level of actual innocence that could get you a constitutional claim either. No, no, no, that's not my question. I apologize. I know you don't think there is enough here to show actual innocence. I get that. My question is, is that even if he got through that gateway, is there a constitutional claim after the gateway? No, there is not, Your Honor. Then why isn't that your basic argument? Your Honor, that sounds like a basic argument from no one that will hit swell. In fact, that's also the right argument. There's no claim here of a constitutional violation. There were several times that the people referred to the government during the trial never told me about Eisenman. But nothing had happened with Eisenman. This was a later investigation of later actions. So is it fair to say you have two arguments? There is no constitutional claim after the gateway. Yes, Your Honor. And even if there were, you don't think the evidence of actual innocence is open enough to go through the gateway? I couldn't have said it better myself, Your Honor. Thank you. Thank you. I'd try not to spide on this motion argument. We'll reserve decision. Your Honor, you can't just make one statement. He went five minutes over this time. He did go five minutes over. I just want to make one statement. You'll have one minute. Nothing was said by the government as to Eisenman and the reasons he was convicted, what he did, when the investigation began, and what else he may have done is supported by anything in the record of this case. All right. And that is why— That's enough. Thank you. We'll reserve decision.